IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR 20-101-CJW-MAR |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| NATHAN NOSLEY, | ) | GOVERNMENT'S RESISTANCE TO DEFENDANT'S MOTION TO SUPPRESS |
| Defendant. | ) | |

The government resists defendant's motion to suppress for the reasons set forth below.[1]

### TABLE OF CONTENTS

I. Defendant Has Not Made a Substantial Preliminary Showing to Support His Allegation of a *Franks* Violation .................................................... 1

II. The Search Warrants Were Supported by Probable Cause .............................. 6

III. The Search Warrants Were Executed in Good Faith, and No Evidence Should Be Suppressed as Fruit of the Poisonous Tree .................... 11

IV. Conclusion ................................................................................................ 16

### I. DEFENDANT HAS NOT MADE A SUBSTANTIAL PRELIMINARY SHOWING TO SUPPORT HIS ALLEGATION OF A FRANKS VIOLATION

Citing *Herring v. United States*, 555 U.S. 135 (2009), defendant argues that the case agent "appears to have been trying to mislead the Court" in applying for

---

[1] Pursuant to the standing order on suppression hearings, the government believes that the two-hour time period allocation for this hearing will be sufficient. The government anticipates that it will call Iowa Division of Criminal Investigation Special Agent Michael McVey as a witness at the suppression hearing.

1

search warrants in this case. (Defendant's Brief in Support of Motion to Suppress (hereinafter "Defendant's Brief") at 6-7). The facts do not support this allegation, and defendant has not made a substantial preliminary showing to support it.

Defendant's quotation from *Herring* includes a quotation from *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155-56.

In *United States v. Cowling*, 648 F.3d 690 (8th Cir. 2011), the court stated:

> To prevail on a *Franks* challenge, a defendant must show the following: (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented."

*Id.* at 695 (quoting *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010)).

Defendant has not made a substantial preliminary showing to support his allegation of a *Franks* violation.[2] He argues that the agent "seemed to insinuate that the image emailed in May of 2017 (redacted) was of a girl that Nosley was acquitted of abusing earlier in 2017." (Defendant's Brief at 4). This argument lacks merit.

---

[2] In his brief, defendant stated, "Nosley will be filing a motion to file exhibits under seal, such as the warrant application, due to the nature of this case." (Brief at 1). The government does not resist a motion to file under seal. The parties have conferred, and the government's understanding is that defendant will be filing the search warrant applications as exhibits.

In the September 20, 2019, Google search warrant affidavit, the agent discussed an investigation of a separate person's activities involving Craigslist postings and Google e-mails related to the postings. (Google search warrant application at 7-9).[3] He stated that, in reviewing that person's e-mails, he found e-mails between that person and defendant. (*Id.* at 8). He stated, "These emails referenced having sexual contact with 6 year old, 8 year old, 16 year old, and 16 year old and under females." (*Id.*). Then, regarding a pornographic image of one minor female, the agent stated, "An email from 'Nate Nosley' [Craigslist e-mail address] had an image attached of a female that appeared to be under 12, licking an adult male's penis. By email they discussed pics and videos to trade." (*Id.*).

After the affidavit, the agent included some of the e-mails between the other person and defendant. (*Id.* at 10-12).[4] As relevant to this child pornography image, the e-mails included the following. In a May 1, 2017 e-mail, defendant stated, "Tonight I have the little 1." (*Id.* at 10). He then sent an e-mail stating, "I have my other friends 6 yr tonight I don't c her very often n tonight is the 1st night I'm having

---

[3] The information on the investigation in the Google search warrant affidavit was also included in the March 2020 search warrant affidavit. (March 2020 search warrant application at 5-7). While the Google search warrant application included some of the e-mails from the other person's Google account, the March 2020 search warrant application included an e-mail from defendant's Google account; this e-mail included replies and other previous e-mails between defendant and the other person. (*Id.* at 10-12).

[4] Some of the e-mails displayed Gmail (Google) addresses, and some displayed Craigslist addresses. (*Id.* at 10-12). The agent explained, "Information from Craigslist indicates: Craigslist offers privacy preference selected by user for display of reply-to email address; options include user email address visible, anonymized email address, or no email address shown." (*Id.* at 7).

her try stuff with me". (*Id.*). The next day, May 2, 2017, the other person responded, "Think I could come watch maybe play too." (*Id.*). Defendant responded, "I don't have her today I'm at work but here's a pic from last night I took". (*Id.*). The agent then stated, "*Attached to this email was an image of what appears to be a child under the age of 12 years old licking a adult males penis.* Because it appears to be child pornography it is not included in this report". (*Id.*).

Near the end of the affidavit, the agent referenced a separate female. He stated that, on or about December 2015 and January 2016, it was alleged that defendant committed sex acts with a seven-year-old female. (*Id.* at 9). In the same paragraph, the agent stated that defendant was acquitted of this sex abuse charge in April 2017. (*Id.*). The agent stated that, in June 2019, he reviewed this female's mother's Facebook profile: "I found an image of the minor female on the mothers account that appeared to be the same female child (including the clothes and pose) image of a purported 8 year old sent by NATE NOSLEY emails (from 2017)." (*Id.*). At the end of the affidavit, the agent stated, "SEE ATTACHED EMAILS, GOOGLE INFORMATION, IMAGE FROM MOTHER'S FACEBOOK PROFILE, CRAIGSLIST INFORMATION". (*Id.*).

In April 22-23, 2017, e-mails between defendant and the other person, included after the affidavit, defendant told the other person that he had a 16-year-old and an 8-year-old available. (*Id.* at 11-12). He clarified that the 16-year-old was not his daughter and stated, "I have a friend who's kid I watch she's 8 n she likes to play around too ;)". (*Id.* at 11). The other person asked what the 16-year-old looked like.

(*Id.*). Defendant asked, "U wanting to do anything with the 8 yr too?" (*Id.*). The other person responded, "Maybe what does she look like." (*Id.*). Defendant then sent the other person an e-mail with an image of a clothed female. (*Id.* at 10-11). This image was a portion of a larger image also included in the search warrant application. (*Id.* at 15).

Defendant claims that the agent "misrepresented the nature of the images that were emailed in May of 2017. The images do not appear to be of the same victim." (Defendant's Brief at 7). Defendant's claim is incorrect. The search warrant application did not suggest that the images were of the same victim. First, the discussion of the sending of the child pornography image was in one part of the affidavit, while the discussion of the 7-year-old and the sending of the clothed image was in another part of the affidavit.

Second, the agent's description of the child pornography image stated that the female appeared to be under age 12. Later, his description of defendant's reported victim stated that she was 7 years old on or about December 2015 and January 2016. Further, citing defendant's e-mails, the agent referred to an "image of a purported 8 year old" in the singular and stated that the image (from defendant's e-mails and the victim's mother's Facebook account) was "including the clothes and pose." Considering defendant's descriptions of the ages of the girls he claimed he had access to, a girl who defendant identified as 6 years old in May 2017 would not have been 8 years old in April 2017.

Third, with respect to the e-mails included after the affidavit, the e-mails

regarding the 6-year-old and the child pornography image were from May 1-2, 2017, while the e-mails referring to the 16-year-old and the 8-year-old were from April 22-23, 2017.

While defendant argues that the agent "appears to have been trying to mislead the Court," he has not made a substantial preliminary showing to support this.

Further, defendant has not made a substantial preliminary showing that what he claims was misleading was "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156. Defendant argues that, "if the image was unconnected to Nosley, there would have been less reason to think that any of Nosley's property would have contained child pornography or contraband." (Defendant's Brief at 4-5). However, defendant's distribution of a pornographic image of a separate child—apart from the image of the clothed child he claimed he had available for the other person—was evidence that his sexual interest in children or child pornography was not limited to one child. Even if the application had suggested that the two females were the same person (which it did not), defendant has not made a substantial preliminary showing that the affidavit would not establish probable cause in the absence of what he argues was misleading.

The government requests that the Court find defendant has not made a substantial preliminary showing to support his allegation of a *Franks* violation.

## II. THE SEARCH WARRANTS WERE SUPPORTED BY PROBABLE CAUSE

Defendant argues that the Google search warrant was based on stale information. (Defendant's Brief at 2-5). He cites *United States v. Lemon*, 590 F.3d

6

612 (8th Cir. 2010), and *United States v. Johnson*, 848 F.3d 872 (8th Cir. 2017). (Defendant's Brief at 2-4). Both *Lemon* and *Johnson* cited *United States v. Morales-Aldahondo*, 524 F.3d 115 (1st Cir. 2008). *Lemon*, 590 F.3d at 615; *Johnson*, 848 F.3d at 877.

Defendant argues that "the warrant application is remarkably different than the warrant applications in *Lemon* and *Johnson*." (Defendant's Brief at 2-4). *Lemon*, *Johnson*, and *Morales-Aldahondo* involved different factual backgrounds. *Lemon* involved a defendant who traded child pornography on four occasions during about a one-month period; this occurred 18 months before the search warrant application. 590 F.3d at 614. *Johnson* involved a defendant who sexually abused a specific victim and produced child pornography; the search warrant was issued 11 months after the defendant took pictures of the victim and 9 months after the last sexual abuse. 848 F.3d at 875-78. *Morales-Aldahondo* involved a defendant whose brother purchased access to child pornography websites and downloaded child pornography more than three years before the search warrant; the court held that this lapse of time between the downloading of child pornography and the search warrant application did not render the information stale under the facts of that case. 524 F.3d at 117-19.

"The specific context and nature of the warrant must be examined for each case; '[t]here is no bright-line test for determining when information in a warrant is stale.'" *Johnson*, 848 F.3d at 877 (quoting *Lemon*, 590 F.3d at 614, in turn quoting *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008)).

Here, the Google search warrant application included but was not limited to the following information. Based on the agent's training and experience, persons involved with child pornography or child sexual exploitation often communicate with others through e-mail or other means of communication. (Google search warrant application at 4). These persons may retain e-mails with significant information, and even when they delete e-mails, they may forget to delete sent e-mails or saved e-mails. (*Id.* at 5). These persons may send sexually explicit photos of minors to other individuals with like interests in order to receive images or communicate, and they may keep child pornography for long time periods. (*Id.*). Regarding Google e-mails, unless the sender of an e-mail specifically deletes the e-mail from the Google server, the e-mail can remain on the system for years. (*Id.* at 6).

After reviewing the Google e-mails of the other person he was investigating, the agent found e-mails between defendant and that person referencing having sexual contact with 6-year-old, 8-year-old, 16-year-old, and 16-year-old and under females. (*Id.* at 8). On April 22-23, 2017, defendant informed the other person that he had a 16-year-old and an 8-year-old available, and he sent the other person a clothed image of the 8-year-old. (*Id.* at 9, 11-12). This image appeared to be of the same female he was acquitted weeks earlier of sexually abusing. (*Id.* at 9). On May 1, 2017, defendant sent an e-mail stating that he would have a 6-year-old female with him that night. (*Id.* at 10). On May 2, 2017, after the other person asked if he could watch or "play," defendant sent an e-mail stating, "I don't have her today I'm at work but here's a pic from last night I took". (*Id.*). This e-mail contained an image of

a female, who appeared to be under 12, licking a adult male's penis. (*Id.* at 8, 10). In a May 12, 2017 e-mail, defendant asked the other person, "do you have any pics or vids to trade?" (*Id.* at 8, 10).

Pursuant to an April 24, 2019 subpoena, Craigslist provided information on the subscriber "Nate Nosley," including defendant's Gmail address. (*Id.* at 9). Pursuant to a June 25, 2019 subpoena, Google provided information indicating that defendant's account with this e-mail address was last logged into on June 21, 2019. (*Id.*). Defendant's Google Services included Android, Gmail, and Google Photos, among other services. (*Id.*). Google provided login IP addresses, including the IP address for the last login. (*Id.* at 9, 13-14).

Based on the information in the search warrant application, there was probable cause that evidence of child pornography was in defendant's Google account.

The March 2020 search warrant affidavit included both the information on the investigation from the Google search warrant affidavit and additional information. (March 2020 search warrant application at 5-8). In the e-mail information Google provided on October 1, 2019, the agent observed e-mails between defendant and the other person referenced in the prior search warrant, including a child pornography image that appeared to be the same image found in the other person's Google search warrant results. (*Id.* at 7). The agent also found in defendant's Google Photos clothed images of a female who appeared to be 12 to 16 years old, including an image of her exposing her breasts. (*Id.* at 7, 9).

Defendant argues that the March 2020 search warrant "was invalid because it

9

lacked a nexus between the contraband and the place to be searched." (Defendant's Brief at 5-6). In the affidavit, the agent stated he found in defendant's Google Photos an image of a red car with a specific license plate number. (March 2020 search warrant application at 7). The agent observed this same car and license plate on defendant's Facebook profile on March 9, 2020. (*Id.* at 7-8). The car still was registered to defendant on that date. (*Id.* at 8).

Regarding the nexus for a search of defendant's person, the agent stated that, based on his training and experience, participants in activity relating to the sexual exploitation of minors and child pornography often save their collections in more than one place to ensure the files are not lost. (*Id.* at 4). "Participants often save photo and video files to mobile devices such as cell phones and iPod type devices that can be carried on their person, in a vehicle, and viewed at will or transferred to other devices such as computers." (*Id.*). Further, items that have been deleted can still reside on computers or other devices and be potentially retrievable. (*Id.* at 5). The June 2019 Google subpoena included Android as one of the services on defendant's Google account. (*Id.* at 6).

Based on the information in the search warrant application, there was probable cause that evidence of child pornography was in defendant's car and on his person, including evidence on cell phones and computers.

## III. THE SEARCH WARRANTS WERE EXECUTED IN GOOD FAITH, AND NO EVIDENCE SHOULD BE SUPPRESSED AS FRUIT OF THE POISONOUS TREE

Defendant argues that the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984), does not apply, and he argues that the items seized in the March 2020 search should be suppressed as fruit of the poisonous tree. (Defendant's Brief at 5-7). Even if the Court determined that either of the search warrants was not supported by probable cause, each search warrant was executed in good faith. Further, no evidence should be suppressed as fruit of the poisonous tree.

First, even if this Court found there was not probable cause to issue either of the search warrants, the good faith exception under *Leon* would apply.

> Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant.

*United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007). However, the government may not rely on the good faith exception if one of four circumstances exists:

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Id.* at 632-33 (quoting *Leon*, 468 U.S. at 923).

Defendant argues that the first circumstance applies here. (Defendant's Brief

11

at 6-7). For the reasons outlined above, defendant's *Franks* argument lacks merit.

Second, defendant argues that, if the Court finds that the Google search warrant lacked probable cause, then evidence from the March 2020 search warrant should be suppressed as fruit of the poisonous tree. (*Id.* at 5-6). This argument fails for two reasons.

First, even though the evidence from the Google search warrant added to the probable cause for the March 2020 search warrant, the application for the March 2020 search warrant was supported by probable cause even without the information from the Google search warrant. The affidavit explained that, based on the agent's training and experience, participants in activity relating to the sexual exploitation of minors often save child pornography in more than one place to ensure the files are not lost; they often save photo and video files to cell phones or other items that can be carried on their persons or in a vehicle; and deleted items can still reside on electronic devices and be potentially retrievable. (March 2020 search warrant application at 4-5). The affidavit included information from defendant's 2017 e-mail exchanges with the other person—obtained from the other person's Google account—including the following facts: (1) the e-mails referenced having sexual contact with 6-year-old, 8-year-old, 16-year-old, and 16-year-old and under females; (2) defendant sent the other person an image of a female, who appeared to be under 12, licking an adult male's penis; and (3) they discussed pics and videos to trade. (*Id.* at 5-6). The affidavit included defendant's acquittal on the sex abuse charge and his sending of the clothed image in 2017. (*Id.* at 6-7). The affidavit also contained information from

the 2019 subpoena to Google, which showed that defendant still was using his Google account in June 2019, including Gmail and Android services. (*Id.* at 6).

Second, even if the Court were to find that the Google search warrant was not supported by probable cause, under *Leon*, it was objectively reasonable for the agent to rely in good faith on the judge's determination that there was probable cause to issue the Google search warrant. Therefore, the information obtained from the Google search warrant was properly considered to support the probable cause determination for the March 2020 search warrant.

In *United States v. White*, 890 F.2d 1413 (8th Cir. 1989), the court applied the *Leon* good faith exception to warrants to search luggage seized at an airport. *Id.* at 1415, 1417. The court held that officers lacked a reasonable articulable suspicion to seize the luggage. *Id.* at 1417. Nevertheless, the court upheld the search warrants under *Leon*:

> The government argues, however, that this conclusion does not necessarily end this case. We agree. The officers did not open and search the luggage until they had prudently obtained warrants. This step, which the law encourages, brings into play the rule of *United States v. Leon, supra*, which the government cites: evidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have believed the seizure valid. This case fits the rule. We believe the Fourth Amendment was violated, but we also believe the facts of this case are close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable. The purchase of the ticket for cash, plus the incremental effect of the other factors present in this case, pushes this case into the gray area created by *Leon*. Accordingly, it was not error to allow the fruits of the search to come into evidence, and the conviction must be affirmed.

*Id.* at 1419.

In *United States v. Conner*, 127 F.3d 663 (8th Cir. 1997), the court rejected the government's argument that the good faith exception applied to a warrant to search a hotel room, where the court held officers could not reasonably believe that their warrantless entry into the hotel room was valid:

> The district court concluded that the government could not invoke *Leon* in this case because "[n]o officer could in good faith believe, under the facts as they existed at the time, that the defendants consented to the officers' visual or physical access to the motel room." *United States v. Conner*, 948 F. Supp. 821, 853 (N.D. Iowa 1996). Nor could the police reasonably believe that exigent circumstances justified the intrusion on Conner and Tilton's reasonable expectation of privacy. *Id.* at 854. Sergeant Young stated that he planned only to talk to the occupants of Room 31 and that he lacked probable cause to arrest prior to viewing the contents of the room. In fact, none of the officers involved even knew to whom the room was rented. We agree with the district court that the exception in *Leon* does not salvage the warrantless entry by police.

*Id.* at 667.

In *United States v. Cannon*, 703 F.3d 407 (8th Cir. 2013), the court held that, even assuming that officers' entry into the defendant's living quarters violated the Fourth Amendment, the good faith exception applied to a warrant to search the living quarters:

> We have applied *Leon* where, as here, the search warrant application cites information gathered in violation of the Fourth Amendment. *See, e.g., United States v. Kiser*, 948 F.2d 418, 421 (8th Cir. 1991); *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989) ("[E]vidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have believed the seizure valid."). For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the detectives' prewarrant conduct must have been "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (quoting

*White*, 890 F.2d at 1419). If "the officers' prewarrant conduct is 'clearly illegal,' the good-faith exception does not apply." *Id.* (quoting *United States v. O'Neal*, 17 F.3d 239, 242-43 n. 6 (8th Cir. 1994)).

> Cannon argues that *Leon* does not apply because the detectives did not have consent for their initial entry and because there were no exigent circumstances to justify the warrantless entry. The good-faith exception applies in this case, however, because it was objectively reasonable when they first entered the rooms for Detectives Barrios and Hignite to believe that they simply were entering rooms that were part of a car dealership business, EZ Credit.

*Id.* at 413.

In *United States v. Rodriguez*, 834 F.3d 937 (8th Cir. 2016), the court held that, even if officers violated the defendant's Fourth Amendment rights by entering his home, their reasonable belief that he consented supported the application of the good faith exception:

> *Leon* applies even if "the search warrant application cites information gathered in violation of the Fourth Amendment." *Cannon*, 703 F.3d at 413; *see also, e.g., United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (analyzing *Leon* good faith exception in context of later-invalidated search that officers argued was consensual); *United States v. McClain*, 444 F.3d 556, 565-66 (6th Cir. 2005) (applying the *Leon* good faith exception despite an earlier Fourth Amendment violation). The touchstone is "whether the officers had an objectively reasonable basis to believe they were complying with [applicable law] and the Fourth Amendment." *Conner*, 127 F.3d at 667. "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the [officers'] prewarrant conduct must have been close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *Cannon*, 703 F.3d at 413. If the officers' prewarrant conduct is "clearly illegal," however, the good-faith exception does not apply. *United States v. O'Neal*, 17 F.3d 239, 242 n.6 (8th Cir. 1994).
>
> Here, suppression based on the officers' warrantless entry was improper. The body-camera video shows that, based on Rodriguez's behavior, the officers' belief he consented to their entry was objectively reasonable.

*Id.* at 941. However, the court found that the good faith exception did not apply to a protective sweep of the defendant's home, where "a protective sweep in the absence of an arrest or reasonable suspicion of dangerous individuals was clearly illegal . . . ." *Id.* at 942.

Here, with respect to the March 2020 search warrant, the evidence defendant alleges was obtained through a Fourth Amendment violation was not evidence from a warrantless search or seizure. Unlike the evidence analyzed in *White*, *Conner*, *Cannon*, and *Rodriguez*, the Google evidence defendant argues is the fruit of the poisonous tree was obtained through a search warrant. Under *Leon*, it was objectively reasonable for the agent to rely in good faith on the judge's determination that there was probable cause to issue the Google search warrant. The evidence from that search warrant was not the fruit of a poisonous tree, and the information obtained from the Google search warrant was properly considered to support the probable cause determination for the March 2020 search warrant.

Both the Google search warrant and the March 2020 search warrant were supported by probable cause, both search warrants were executed in good faith, and none of the evidence should be excluded as the fruit of a poisonous tree.

### IV. CONCLUSION

Based on the above reasons, the government respectfully requests that the Court deny defendant's motion to suppress.

Respectfully submitted,

PETER E. DEEGAN, JR.
United States Attorney

By: s/ Mark Tremmel

MARK TREMMEL
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333 / (319) 363-1990 (fax)
Mark.Tremmel@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on January 11, 2021.

UNITED STATES ATTORNEY

BY: s/ Mark Tremmel

COPIES TO: Dan Vondra