UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS, IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 20-CR-00101 |
|     Plaintiff | ) | |
| vs. | ) | MEMORANDUM AND BRIEF |
| | ) | IN SUPPORT OF |
| NATHAN NOSLEY, | ) | DOWNWARD VARIANCE |
|     Defendant. | ) | |

Nathan Nosley's sentencing is scheduled for Jan. 18, 2022, at 3:00 p.m.

## 1) ISSUES

Nosley will request that the court vary downward from the sentencing guidelines as calculated by the probation office based on the factors listed in 18 U.S.C. § 3553(a). Nosley objected to much of the pre-sentence report relating to the offense conduct to ensure that he would not be admitting facts that could undermine an appeal of the conviction, with the understanding that the burden of proof at the sentencing hearing is different than at trial.

Nosley has not identified any specific legal error in the application of the sentencing guidelines as set forth by Probation if the Court makes the same factual findings as Probation. Nosley does contest the amount of restitution (restitution is mandatory), as the Eighth Circuit has held that "[R]estitution could be awarded in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. United States v. Hoskins, 876 F.3d 942, 946 (8th Cir. 2017) (internal citations omitted).

1

## 2) WITNESSES AND EXHIBITS

Nosley does not intend to call any witnesses at his sentencing hearing, and he will rely on the pre-sentence report, which explains the mitigating factors in his case. Nosley is attaching Exhibit A.

## 3) ARGUMENT: THE GUIDELINES AND THE RELATED ENHANCEMENTS CREATE INEXPLICABLE SENTENCING DISPARITIES

The sentencing guidelines relating to child sexual exploitation and child pornography can quickly result in lengthy sentences that do not further the traditional statutory purposes set forth at 18 U.S.C. § 3553(a). The conflict between the guidelines and the statute has been recognized in the Northern District of Iowa. See United States v. Beiermann, 599 F. Supp. 2d 1087, 1100 (N.D. Iowa 2009) ("Even before Spears, numerous district courts had read Kimbrough to permit a sentencing court to give little deference to the guideline for child pornography cases on the ground that the guideline did not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis, but was the result of congressional mandates, often passed by Congress with little debate or analysis."). Judge Bennett further explained and applied that reasoning in United States v. Jacob, 631 F. Supp. 2d 1099, 1112 (N.D. Iowa 2009), stating, "I also find that application of both U.S.S.G. § 2G2.2(b)(5), which provides a five-level increase for a "pattern of activity," and U.S.S.G. § 4B1.5(b)(1), for a "pattern of activity involving sexual conduct," may not technically be "double counting," but that the

2

resulting ten-level increase is another way in which § 2G2.2 improperly skews upward sentences in child pornography cases, either without regard to distinctions between least and worst offenders or without regard for the proper or realistic weighting of a relevant factor in such distinctions."

The U.S. Sentencing Commission published a report in Oct. of 2021, which is available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf. Nosley requests the Court take judicial notice of the report. Page 27 of the report shows the following way that sentences for production of child pornography have trended:



Presumably, because the enhancements result in such lengthy overall sentences, most offenders actually receive a downward variance, as is explained on page 28 of the report:

3

## Sentences Imposed Relative to the Guideline Range

### Fiscal Year 2019 Snapshot

Despite the lengthy average sentence (275 months), most child pornography production offenders sentenced under §2G2.1 were sentenced below the guideline range in fiscal year 2019. Less than one-third (30.7%) of child pornography production offenders sentenced under §2G2.1 received a sentence within the guideline range in fiscal year 2019 (Figure 8).

The majority of child pornography production offenders sentenced under §2G2.1 (57.2%) received a variance below the guideline range under 18 U.S.C. § 3553(a).[37] More than one-third (36.1%) of offenders received a non-government sponsored variance below the guideline range, compared to roughly one-fifth (21.1%) that were government-sponsored. Relatively few child pornography production offenders (1.2%) received a variance above the guideline range.

Of the 512 child pornography production offenders sentenced in fiscal year 2019, 10.6 percent received a departure below the guideline range that was either a government-sponsored departure (5.9%),[38] substantial assistance departure (3.1%),[39] or court-sponsored downward departure (1.6%). Few offenders (0.4%) received a departure above the applicable guideline range.

### Trends from Fiscal Years 2005 – 2019

The percentage of child pornography production offenders sentenced below the guideline range has changed over time (Figure 9, next page). The rate of within-range sentences for offenders sentenced under §2G2.1 has decreased steadily since fiscal year 2005, from 83.3 percent to 30.7 percent in fiscal year 2019. This change is driven largely by an increase in the rate of downward variances during that time, from 16.7 percent in fiscal year 2005 to a peak of 57.2 percent in fiscal year 2019. The rate of substantial assistance departures, other downward departures, and upward departures or variances has remained relatively steady over time.

Figure 8. Sentence Imposed Relative to the Guideline Range for §2G2.1 Offenders
Fiscal Year 2019

The sentencing guidelines were promulgated to reduce sentencing disparities so that only the worst offenders would receive sentences like life in prison, which is what Nosley's guidelines effectively are.

With the aforementioned data in mind, the Court has a more difficult task at hand when it comes to reducing sentencing disparities. Downward variances result in an average sentence of 275 months, and even with the five-level enhancement, the average sentence was 387 months for offenders with a prior conviction. Id. p. 50. A careful review of the Sentencing Commission's report demonstrates that even

4

with all of the aggravating factors presented by the government in this case, a downward variance is warranted because a sentence within the guidelines would actually be an extreme outlier.

### 4) ARGUMENT: THE COURT SHOULD VARY DOWNWARD BECAUSE AN EXTREMELY LONG SENTENCE WOULD BE GREATER THAN NECESSARY TO COMPORT WITH THE PURPOSES OF 18 U.S.C. 3553(A)

Eighteen U.S.C. § 3553(a) states:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines … [ ].

(5) any pertinent policy statement … [ ]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.
18 U.S.C.A. § 3553.

In Nosley's case, a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) should vary below the guidelines, which probation has calculated at life (capped at the statutory maximums). The nature and circumstances of the offenses are not the worst-case imaginable when it comes to the serious offenses of child sexual exploitation and distribution of child pornography. The guidelines as calculated by Probation would seem to indicate that the offense should be treated as one of the worst cases imaginable. But the offense conduct asserted by the government in this case did not involve force, coercion, a commercial element, a parental relationship with the victim, or any of those aggravating factors. The Eighth Circuit has affirmed a below guideline 30-month sentence when a 19-year-old met a 12-year-old online, and then traveled to Iowa on multiple occasions to have sex with her. See U.S. v. Garate, 543 F.3d 1026 (8 Cir. 2008) (After Gall, the circuit affirmed 30 months for traveling with intent to engage in sexual conduct with a minor despite a guideline range of 57-71 months, which the district court based on defendant's age, immaturity, lack of a prior record, and the fact Garate "was not a predator and did not fit the profile of many pedophiles convicted of the same crime").

In terms of the need for the sentence to protect the public from future crimes of Nosley (specific deterrence), to promote respect for the law and demonstrate the seriousness of the offense (general deterrence), an average sentence as outlined by the Sentencing Commission or even above average at 300-400 months would be

6

sufficient but not greater than necessary to achieve the purposes of the sentencing statute. The public perception of that type of sentence would be that child sexual exploitation and distribution of child pornography are serious crimes that result in extremely long sentences in a federal prison, along with serious financial penalties, restitution, and the sex offender registry.

Unfortunately for Nosley, his childhood neglect and mental health conditions contributed to an apparent lack of empathy, impulse control, substance abuse, and detachment from reality. Chief Justice Rehnquist recognized that "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." See Santosky v. Kramer, 455 U.S. 745, 789 (1982) (the issue in the case was due process in termination of parental rights case, but the quote is persuasive when it comes to the consequences of a childhood abuse).

USSG §5K2.13(p.s.) encourages a downward departure if (1) the defendant committed the offense while suffering from "a significantly reduced mental capacity" and this reduced capacity "contributed substantially to the commission of the crime." Significantly reduced mental capacity "means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." § 5K2.13, cmt. (n.1). The pre-sentence report indicates that Nosley had a difficult infancy. As researchers learn more about brain development, it is becoming clear that neglect and abuse that

7

occur in utero, during infancy, and when a child is very young, actually damage the structure of the brain, as well as the brain's processes, even worse than abuse and neglect that occurs later in a child's development. See Ex. A. Presumably, the restitution requests anticipated by the government will agree with this contention and document how the victims of child pornography were impacted emotionally and suffered the types of brain injuries discussed in Exhibit A. While the article at Exhibit A suggests an extremely uphill battle for individuals with adverse childhood experiences, researchers are learning more about how the brain works and how to treat such people. A sentence of less than life would assure community safety as technology and therapeutic treatment emerge over the next several hundred months.

In Nosley's case, he was adopted at the age of only 18 months due to his biological mother's substance abuse. PSR ¶ 66. And then his adoptive parents divorced when Nosley was only 2 years old. Id. ¶66. Obviously, Nosley was too young to remember specifics of his biological mother's substance abuse, and counselors don't use brain-imaging to treat and diagnose people with mental health issues, so it would be impossible to prove how his biological mother's neglect impacted him. But Nosley has been diagnosed with certain hallmarks of abuse going back to his own childhood, ADHD, other mental health disorders, and substance abuse. PSR ¶ 71-84.

The offense conduct alleged covers a time period of fewer than four years (2016-2020), and during that time, Nosley was using hard drugs like

8

methamphetamine, which distorted his reality and made his impulse control even worse. Nosley had been doing okay in very structured environments like the military, and he has been able to hold a job and work for a living. Even though the allegations in this case are very serious, Nosley has had significant times during his life when he was a functional citizen.

5) Conclusion

Nosley respectfully requests the Court favorably exercise discretion on him and vary downward regarding the ultimate disposition in this case. When the factors listed in 18 U.S.C. § 3553(a) are applied to the facts in his case, it appears that he has the type of case where a significant variance from the guidelines is reasonable. A significant downward variance with a term of supervised release to follow would be a sentence sufficient, but not greater than necessary, to carry out the purposes in the sentencing statute.

Date: January 11, 2022.

Respectfully submitted,

/s/ Dan Vondra
Dan Vondra, AT 0008084
Vondra Law Office PLC
745 Community Dr., Unit C
North Liberty, IA 52317
(319) 438-2888
dan@vondralawoffice.com

CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2022, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

/s/ Dan Vondra