IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 20-101-CJW-MAR |
| Plaintiff, | ) | |
| vs. | ) | |
| NATHAN NOSLEY, | ) | GOVERNMENT'S RESISTANCE |
| | ) | TO DEFENDANT'S MOTION |
| Defendant. | ) | FOR DOWNWARD VARIANCE |

Defendant argues that he should receive a downward variance based on factors including his disagreement with the guidelines, his argument that the conduct underlying Count 1 is less aggravating than in some cases, his upbringing, and his mental health and substance abuse issues. (Defendant's Memorandum and Brief in Support of Downward Variance ("Defendant's Memorandum") at 2-9). Based on the factors under 18 U.S.C. § 3553(a), a downward variance is not warranted in this case.

The "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), include (1) defendant's sexual exploitation of two minors, (2) his distribution of child pornography; (3) his receiving, possessing, and accessing child pornography; and (4) his pulling a loaded gun on law enforcement officers who were arresting him for these offenses.

The child pornography defendant received and possessed included depictions that were extremely aggravating in nature. (Government Trial Exhibit 20 (videos); PSIR ¶ 20 (descriptions of videos)).

Defendant argues that his upbringing and his mental health conditions "contributed to an apparent lack of empathy, impulse control, substance abuse, and

1

detachment from reality." (Defendant's Memorandum at 7). In his March 23, 2020, interview with Special Agent McVey, defendant blamed drug use for his 2017 conduct involving child pornography and his claimed lack of memory of this conduct. (Government Exhibit 2 at 9:35-12:00, 13:50-13:55).[1] In his November 7, 2020, interview with Special Agent McVey and Special Agent Allen, defendant said that his receipt of child pornography occurred during his "drug use days" and that he did not remember a lot of things. (Government Trial Exhibit 4 at 8:45-9:15). After his trial in this case, defendant continued to blame drug use for his misconduct, including his molesting a seven-year-old girl. (Government Exhibit 5 at 11, 10, 8, 4, 3, 1).[2] However, defendant's conduct has been persistent and calculated, and it is not attributable to impulse control or his being under the influence of drugs.

In 2016, a seven-year-old girl reported that defendant had molested her. She stated that he put his "front" in her "front" (Government Exhibit 1 at 10:04, 10:16), she described his putting his "front" in her mouth (*id.* at 10:17-10:18), and she described his

---

[1] The audio of this interview includes the information in PSIR ¶ 12, to which defendant has objected. (Government Exhibit 2). Most of this information is between 5:00 and 12:20 of this audio. Also in this interview, defendant admitted that he was the only person who used his Gmail address. (Government Exhibit 2 at 3:15-3:25). He stated that he used his Samsung cell phone for Gmail, but he denied that any inappropriate pictures were on this phone. (*Id.* at 12:45-14:15). When asked, he declined to give Special Agent McVey the password to this phone. (*Id.* at 14:00-14:10). In addition to the red Samsung phone that defendant initially discussed with Special Agent McVey, another Samsung phone was seized from defendant's vehicle; defendant stated that he got this phone in about December 2018. (*Id.* at 29:25-29:55). *See* Count 5 (black phone); Count 4 (micro SD card from black phone); Count 6 (red phone).

[2] Government Exhibit 5 contains defendant's jail text messages with the girl's mother on or about July 8, 2021. The earliest text messages are on the bottom of page 11.

2

putting his finger in her "front" (*id.* at 10:19).³ She drew a picture of defendant's penis (*id.* at 10:22; Government Exhibit 3 at 9), she demonstrated how he moved his hand up and down on his "front" (Government Exhibit 1 at 10:23), and she stated that "white stuff" came out of his "front" (*id.* at 10:29).

On February 16, 2017, defendant responded to another man's Craiglist posting and e-mailed the man, "How old of a girl r u looking for I got a daughter u can play with just answer how old ur looking for n I'll send pics." (Government Trial Exhibit 1 at 3-4; Government Trial Exhibit 91 at 1-2).

On April 7, 2017, defendant was acquitted of the 2016 molestation of the seven-year-old girl. On April 22, 2017, the man who made the Craigslist posting responded to defendant's February 16 message. (Government Trial Exhibit 1 at 3; Government Trial Exhibit 91 at 1). On April 23, 2017, defendant stated that "I have a friend who's kid I watch she's 8 n she likes to play around too;)" (*Id.*). After they discussed a 16-year-old girl defendant claimed he had available, defendant asked the other man, "U wanting to do anything with the 8 yr too?," and the man responded, "Maybe what does she look like." (Government Trial Exhibit 1 at 2; Government Trial Exhibit 91 at 1). Defendant responded by sending a cropped picture (nonpornographic) of the girl who, 16 days earlier, he had been acquitted of molesting. (Government Exhibit 91 at 4).

On May 1, 2017, defendant e-mailed the man, "I have my other friends 6 yr tonight I don't c her very often n tonight is the 1st night I'm having her try stuff with

---

³ References to the interview video are to the clock times displayed on the video screen.

3

me." (Government Exhibit 1 at 1). On May 2, 2017, defendant e-mailed the man, "I don't have her today I'm at work but here's a pic from last night I took." (*Id.* at 1). Attached to the e-mail was an image of a prepubescent girl licking a man's penis. (*Id.* at 10).

When Special Agent McVey showed defendant redacted versions of some of these e-mails on March 23, 2020, defendant said that this was a "dark time" in his life when he was heavily into drugs. (Government Exhibit 2 at 9:35-12:00). However, defendant sent these e-mails shortly after he was on trial in state court. In a series of messages, defendant communicated with the other man about sex with children, sent the man a cropped picture of his victim, and sent the man an image of child pornography. This behavior was not one-time or impulsive behavior, and it was not done because defendant was under the influence of drugs. Rather, this was calculated, ongoing conduct.

In February 2018, defendant used a cell phone to persuade, induce, and entice a 13-year-old girl to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. They exchanged sexually explicit depictions, and defendant sent the victim videos of himself masturbating. The victim sent defendant images of herself, including child pornography images and non-pornography images. (Government Trial Exhibits 101-147). In March 2018, defendant e-mailed depictions of the victim, including child pornography depictions, to persons he had met on Craigslist. (Government Trial Exhibits 151, 153-157). Defendant and the victim made plans to meet and have sex, but her mother discovered the plans, and they did not meet.

4

Beginning in at least October 2019, defendant began to engage in sexual communications with a 16-year-old girl. (Government Trial Exhibits 245, 251 at 1). He used a cell phone to persuade, induce, and entice her to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. They exchanged sexually explicit depictions, and the defendant sent the victim videos of himself masturbating. In February and March 2020, the victim produced images (pornographic and nonpornographic) and videos (pornographic and nonpornographic) of herself and sent them to defendant. (Government Trial Exhibits 201-238, 240, 246, 252-255). On February 27, 2020, defendant met the victim at her high school, and they went to her residence, where the victim performed oral sex upon defendant.

In September 2020, defendant sent Snapchat messages to the mother of the girl he had molested in 2016. (Government Trial Exhibits 83-84). In these messages, he admitted to molesting the girl, but he claimed that she had initiated the contact. He stated that, the first time, "I had closed my eyes n then I noticed her sticking her hands down my pants . . . ." (*Id.*). He stated that the "2nd time while I was sitting on the couch she came got on her knees in between my legs n asked if she could suck on it I said yes n let her she did that till I came in her mouth n asked for more . . . ." (*Id.*). He stated, "both times she enjoyed it I never did anything to hurt her or against her will she initiated it both times I just didn't say no n tell u about it like I should have". (*Id.*).

In a November 7, 2020, interview, defendant told investigators that he was just telling the mother what she wanted to hear so she would have peace of mind. (Government Trial Exhibit 4 at 6:10-6:35).

5

On November 20, 2020, when law enforcement officers went to his mother's residence to arrest him, defendant went out on the porch, then asked to go back into the residence to speak with his mother. (Government Exhibit 6 at 1). When he came out, defendant took his coat off and attempted to walk past officers before they patted him down for weapons. (*Id.* at 1, 5, 8, 10). Defendant pulled out a loaded gun, a round was in the chamber, and defendant's finger was on the trigger. (*Id.* at 2 (defendant stated that gun jammed), 3, 6 (Special Agent Allen saw trigger guard with a portion of defendant's finger in it, but the finger was not wrapped over the trigger at this point), 10; Government Trial Exhibit 5 at 6:20-7:00). Defendant bit Special Agent Allen's wrist when Special Agent Allen was attempting to get the gun out of defendant's hand. (Government Exhibit 6 at 6-7). Defendant stated that he wanted officers to shoot him. (Government Trial Exhibit 5 at 6:50-9:40). He also stated, "From here on out, I'm going to be attempting to kill myself and anybody else I can . . . [portions difficult to hear] . . . I'd rather be dead." (*Id.* at 8:20-8:30).

Defendant told officers that he was trying to shoot himself. However, he was attempting to walk past officers before they patted him down for weapons. Further, in addition to the 9 mm gun and attached magazine, defendant had four rounds of 9 mm ammunition in his left front pocket. (Government Exhibit 6 at 2, 6, 11-12).

After trial in this case, on or about July 8, 2021, defendant exchanged text messages with the seven-year-old victim's mother. (Government Exhibit 5). In two successive messages, defendant stated, "as for [the victim] i do belive sme1 lse has done something with her cuz she inisheated it with me i did not start it but niether did i stop

6

like i . . . should have . . . ." (*Id.* at 8). This is very similar to his claim in the September 2020 Snapchat message that the victim "initiated" the conduct.

In another July 8 message, defendant stated, "also im gana b doing life, i dont want to ever get out if i have to kill ppl to stay longer i will". (*Id.* at 10).

When defendant made these statements on July 8, he was in jail and presumably was not under the influence of drugs.

Defendant's "history and characteristics," 18 U.S.C. § 3553(a)(1), include the conduct outlined above. His verified mental health history is outlined in PSIR ¶ 72. His documented substance abuse treatment is outlined in PSIR ¶ 83. He has a history of some employment. (PSIR ¶ 90). Defendant was in the Army National Guard for about a year and a half until he was convicted of two burglaries. (PSIR ¶ 89).

In September 2008 and November 2008, defendant committed burglaries (1) of a school and (2) of his mother's and stepfather's residence (with accomplices). (PSIR ¶¶ 52-53). In the second burglary, a gun safe was breached, and a large number of guns and ammunition were stolen. (PSIR ¶ 53). Defendant received deferred judgments for both burglaries in November 2009, the deferred judgments were revoked in April 2010, he was found in contempt in November 2010, he was found in contempt again in July 2011, and his probation in both cases was revoked in November 2011. (PSIR ¶¶ 52-53). He served about six months in prison before he was discharged. (*Id.*). Defendant was convicted of escape in 2010 and theft in 2012. (PSIR ¶¶ 54-55).

Defendant argues that the advisory guidelines result in a sentence that is too long in this case, citing policy disagreements with the guidelines enhancements. (Defendant's Memorandum at 2-5). However, defendant's guidelines sentence of 140

7

years' imprisonment is appropriate under 18 U.S.C. § 3553(a) because of the extremely aggravating nature of defendant's conduct.

Defendant's adoptive mother reported that his biological mother was a substance abuser. (PSIR ¶ 66). Citing this and a 2001 article, defendant argues that this affected his brain development, and he attempts to tie this to ADHD and other mental health disorders. (Defendant's Memorandum at 7-8; Defendant's Exhibit A). However, defendant also states that he "has had significant times during his life when he was a functional citizen." (Defendant's Memorandum at 9). The record does not support an argument that defendant's brain development is a mitigating factor in this case. Further, given his repeated sexual exploitation of children and his violent conduct, defendant's argument that a "sentence of less than life would assure community safety as technology and therapeutic treatment emerge over the next several hundred months" (*id.* at 8) is not convincing.

Any mitigating factors in this case are outweighed by the aggravating nature of defendant's abusive and violent conduct. Over a period of several years, defendant made the conscious decisions (1) to molest a seven-year-old girl, (2) to sexually exploit a 13-year-old girl and to send pornographic images of her to others, (3) to sexually exploit a 16-year-old girl, and (4) to distribute, receive, and possess child pornography involving extremely young children. Instead of taking responsibility for what he has done, defendant has repeatedly blamed his conduct on his drug use, and he has claimed on two separate occasions that the seven-year-old girl initiated sexual activity with him.

Finally, defendant's actions on November 20, 2020, demonstrate the ongoing danger he represents to the community. While defendant claimed that he was not

8

Case 1:20-cr-00101-CJW-MAR   Document 96   Filed 01/14/22   Page 8 of 9

trying to hurt officers on that day, he stated that he was willing to kill himself and others in the future. (Government Trial Exhibit 5 at 8:20-8:30). He again indicated his willingness to kill others on July 8, 2021. (Government Exhibit 5 at 10).

A guidelines sentence in this case would "reflect the seriousness of the offense," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). Significantly, a guidelines sentence would "protect the public from further crimes of the defendant." *Id.*

Based on the factors under 18 U.S.C. § 3553(a), a downward variance is not warranted in this case.

Respectfully submitted,

SEAN R. BERRY.
United States Attorney

By: s/ Mark Tremmel

MARK TREMMEL
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333 / (319) 363-1990 (fax)
Mark.Tremmel@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on January 14, 2022.

UNITED STATES ATTORNEY

BY: s/ Mark Tremmel

COPIES TO: Dan Vondra